**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America,<br><br>                                      Plaintiff,<br><br>                      -v-<br><br>Betty Falk,<br><br>                                      Defendant. | 2:25-cv-449<br>(NJC) (SIL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

The United States of America ("Plaintiff") brings this action against Betty Falk ("Ms. Falk"), pursuant to 26 U.S.C. § 7402(a), at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, to: (1) establish that Ms. Falk used funds fraudulently transferred to her by her husband, non-party Jeffrey M. Falk ("Mr. Falk"), to acquire and make mortgage and property tax payments on a property titled in her name (the "Property"), such that, upon avoidance of the transfers, Plaintiff will be entitled collect judgment from Ms. Falk up to the total value of the transfers; (2) to trace mortgage and property tax payments made by Mr. Falk after federal tax liens arose and attached on to the Property, and to establish that the tax liens encumber the Property in the amount of the sum of all lien-encumbered payments, or alternatively to obtain a money judgment against Ms. Falk in an amount equal to the sum of such payments; and (3) conduct an investigation through discovery of all other transfers to Ms. Falk of any money or other property subject to the tax liens against Mr. Falk, seeking a money judgment against Ms. Falk in the amount of the funds so supplied. (Compl. ECF No. 1, at 1–2.)

The Complaint was filed on January 27, 2025. (ECF No. 1.) After a series of requests for extensions to respond (ECF Nos. 7, 9, 10), Ms. Falk filed a letter-motion on June 9, 2025, requesting either a briefing schedule or pre-motion conference for her anticipated motion to dismiss the Complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot. ("PMC Letter"), ECF No. 11 at 1.) On June 11, 2025, Plaintiff filed a response arguing that the Court should summarily deny Falk's anticipated motion to dismiss and order Falk to answer the Complaint. (Ltr., ("Opp."), ECF No. 12.)

On October 1, 2025, Plaintiff filed a motion to stay all case deadlines in light of the lapse in government appropriations funding the United States Department of Justice, which prohibited Plaintiff's attorneys from working on the case. (ECF No. 13.) On November 12, 2025, funding was restored to federal agencies, ending the lapse in government appropriations. On February 6, 2026, the Court issued an Order requiring Plaintiff to file a letter notifying the Court whether it intends to proceed in litigating the case, since Plaintiff had failed to take any steps in advancing the case after funding was restored to federal agencies. (*See* Elec. Order, Feb. 6, 2026.) Plaintiff was warned that failure to respond to the Order by February 13, 2026, would lead to the case being dismissed for failure to prosecute under Fed. R. Civ. P. Rule 41(b). (*Id*.) On February 11, 2026, Plaintiff filed a letter informing the Court that it intends to prosecute the case and renewed its June 11, 2025 opposition to Ms. Falk's letter-motion on her anticipated motion to dismiss. (ECF No. 14.) On February 17, 2026, Ms. Falk filed an additional motion to dismiss, this time arguing that the Court should dismiss the case pursuant to Fed. R. Civ. P. Rule 41(b) due to Plaintiff's failure to advance the case after funding was restored to the Department of Justice, prior to the Court's February 6, 2026 Order.

Before the Court are Ms. Falk's two letter-motions: (1) the June 9, 2025 letter-motion seeking a pre-motion conference on an anticipated motion to dismiss; and (2) the February 17, 2026 letter-motion arguing that the Court should dismiss the case for Plaintiff's failure to prosecute. The Court deems Ms. Falk's motion to dismiss as made by her June 9, 2025 letter-motion. Both the June 9, 2025 letter-motion to dismiss the Complaint under Rules 12(b)(1) and (6), and the February 17, 2026 letter-motion to dismiss the case under Rule 41(b), Fed. R. Civ. P, are denied for the reasons set forth below.

## LEGAL STANDARDS

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (internal quotation marks omitted); *Russo v. United States*, No. 22-cv-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025).

A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-3234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the

3

jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden" and the district court need only assess the facts alleged in the complaint. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotation marks omitted); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations" of the pleading, the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57.

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a

4

sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A complaint fails to state a claim "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

## DISCUSSION

### I.    June 9, 2025 Letter-Motion to Dismiss

### A.  Jurisdiction and Dismissal Under Rule 12(b)(1)

Ms. Falk's argument that this "Court lacks subject matter jurisdiction over this case as it raises no federal claim against Defendant, nor does it present a federal question" and thus warrants dismissal is without merit and borders on frivolous. (PMC Letter. at 1.) This Court plainly has jurisdiction over this action under 28 U.S.C. §§ 1331, 1340, and 1345, because it is brought by the United States seeking enforcement of internal revenue laws, pursuant to 26 U.S.C. § 7402(a). *See United States v. Doonan,* No. 19-cv-9578, 2020 WL 1659861, at *5 (S.D.N.Y. Apr. 3, 2020) ("The statute [26 U.S.C. § 7402(a)] is broad and manifests a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws."); *see also United States v. Phillips*, No. 2:22-cv-2564, 2025 WL 2689614, at *2 (E.D.N.Y. Sept. 19, 2025) (Choudhury, J.). Although Plaintiff brings claims under New York Debtor and Creditor Law ("NYDCL") §§ 273, 274 and 276, district courts nonetheless have original jurisdiction over all cases in which the United States is a plaintiff. 28 U.S.C. § 1345. Further, Plaintiff routinely brings claims seeking enforcement of internal revenue laws that include fraudulent conveyance claims under state law because such

5

claims *must* be brought under state law. *See United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994) ("We note at the outset that the validity of the conveyance in this case is governed by New York law." (citing *Aquilino v. United States*, 363 U.S. 509, 512–13 (1960) for the rule that "'federal . . . courts must look to state law' to ascertain whether a taxpayer has a property interest in property subjected to a federal tax lien")); *see also United States v. Sweeny*, 418 F. Supp. 2d 492, 498 (S.D.N.Y. 2006) (ruling on Plaintiff's claims under NYDCL sections 273 and 276 against fraudulent conveyance pursuant to 26 U.S.C. §§ 7401, 7402 and 7403).

Accordingly, this Court's jurisdiction to hear Plaintiff's claims is firmly established, and Ms. Falk's invocation of Rule 12(b)(1) borders on the frivolous.

### B. Dismissal Under Rule 12(b)(6)

Ms. Falk also moves to dismiss the Complaint under Rule 12(b)(6) on four separate theories: (1) the tax liabilities detailed in the Complaint are owed by another taxpayer and do not implicate her; (2) the federal tax liens that form the basis of the Complaint are procedurally defective; (3) the federal tax liens are unenforceable under 26 U.S.C. § 6322 because more than ten years have elapsed since the date they were assessed; and (4) and Plaintiff's attempt to encumber and levy the Property is unconstitutional because Ms. Falk does not owe any additional taxes on it. (PMC Letter at 2–3.) None of Ms. Falk's theories support dismissal of this action.

First, Ms. Falk's contention that there is no plausible claim that she is implicated by the tax liabilities detailed in the Complaint is unsupported. (PMC at 1.) The Complaint alleges in detail that the Property titled under Ms. Falk's name was acquired with funds from her husband, Mr. Falk, which were encumbered by federal tax liens. (*See* Compl. ¶¶ 4, 8, 43–44 (detailing Mr. Falk's tax assessments and federal tax liens attaching to Mr. Falk's property and rights to

property under 26 U.S.C. §§ 6321 and 6322, and his stipulation to liability for unpaid taxes between 1993 and 2006); *id.* at ¶¶ 11–20 (detailing Ms. Falk's acquisition of the Property despite her limited income); *id.* at ¶¶ 34–38 (alleging that Mr. Falk transferred substantial funds to Ms. Falk for mortgage payments for the purpose of delaying, hindering, or defrauding Mr. Falk's tax creditors).) On this basis the Complaint seeks to establish that Mr. Falk fraudulently transferred the Property to Ms. Falk under NYDCL §§ 273, 274 and 276. (*Id.* at ¶¶ 9–41). Plaintiff has brought similar claims before. *See, e.g.*, *United States v. Mazzeo*, 306 F. Supp. 2d 294, 305 (E.D.N.Y. 2004) (seeking to execute a lien on a house alleged to be fraudulently transferred from an encumbered party to his spouse), *vacated by stipulation*, (E.D.N.Y. Oct. 20, 2004). Further, Plaintiff argues that the federal tax liens encumbering Mr. Falk's assets attach to any property substituted for those encumbered assets—which, in this case, is alleged to be the Property under Ms. Falk's name. *See In re Callahan*, 442 B.R. 1, 7 (D. Mass. 2010) ("Once a tax lien attaches to property, "[t]he lien reattaches to the thing and to whatever is substituted for it . . . The owner and the lien holder, whose claims have been wrongfully displaced, may follow the proceeds wherever they can distinctly trace them.'" (quoting *Phelps v. United States,* 421 U.S. 330, 334–35 (1975))). As such, the Complaint alleges sufficient facts and claims against Ms. Falk, despite the parties' agreement that the lax liabilities giving rise to the claims belong to her husband.

Second, Ms. Falk argues that the Complaint "concedes numerous procedural defects with the tax liens" at issue in this dispute, but the only defect she identifies is Plaintiff's failure to refile tax lien notices for the 1993–1995 tax years. (PMC at 3.) However, as Plaintiff points out, the Complaint explicitly states it is not relying on the 1993, 1994, or 1995 tax years to support its lien-tracing cause of action against Ms. Falk. (Opp. at 2; Compl. ¶ 45.) The alleged procedural defects Ms. Falk identifies are therefore not a basis for dismissing the Complaint.

7

Third, the statute of limitations for collecting Mr. Falk's tax liabilities has not expired. Under 26 U.S.C. § 6502, the government must *begin proceedings* to collect taxes within ten years of the date such taxes are assessed. *See* 26 U.S.C. § 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected  . . . only if the levy is made or the *proceeding begun* . . . within 10 years after the assessment of the tax[.]" (emphasis added)). The statute also plainly states that once "a timely proceeding in court for the collection of a tax is commenced," the period during which the outstanding taxes may be collected "shall not expire until the liability for the tax . . . is satisfied or becomes unenforceable." *Id*. § 65201(a)(2). Here, the Complaint alleges that the government began proceedings to collect Mr. Falk's outstanding tax liabilities within ten years of their assessment. (Compl. ¶¶ 7–8.) Accordingly, until the tax liability has been satisfied or rendered unenforceable, the government may initiate proceedings in court to collect the outstanding tax. Moreover, to the extent Ms. Falk argues that Plaintiff's suit is barred by the doctrine of laches, she is mistaken: it is well settled that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002); *United States v. Summerlin,* 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights.").

Finally, Ms. Falk's reliance on *Tyler v. Hennepin County*, 598 U.S. 631 (2023) to argue that Plaintiff's "attempt to encumber and levy [Ms. Falk's] residence and homestead is precluded, *inter alia,* by the Takings Clause of the Fifth Amendment" is inapposite. (PMC at 3.) At issue in *Tyler* was a Minnesota law under which the county kept surplus proceeds from the state's sale of a property in which it obtained a limited title due to the property owner's failure to

8

pay property taxes. *Tyler*, 598 U.S. at 635. Those facts bear little resemblance to Plaintiff's suit. Here, Plaintiff seeks to recover funds subject to federal tax liens that were allegedly fraudulently transferred to Ms. Falk by her husband to make mortgage and property tax payments on the Property—*not* to assess surplus taxes on the Property, as Ms. Falk claims. (*See* Compl. at 1; PMC at 3.)

Accordingly, Ms. Falk's motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is deemed made on the pre-motion conference letters and denied.

## II.      February 17, 2026 Letter-Motion to Dismiss

On February 17, 2026, Ms. Falk filed an additional motion to dismiss, this time under Fed. R. Civ. P. 41(b), arguing that the Court should dismiss this case due to Plaintiff's failure to prosecute. (Ltr. Mot. to Dismiss ("Feb. Mot."), ECF No. 15 at 1.) Plaintiff's inactivity between November 12, 2025, when funding was restored to the federal government, through February 11, 2026, when Plaintiff timely responded to this Court's Order requiring Plaintiff to file a letter stating whether it intends to proceed in litigating the case (Elec. Order, Feb. 6, 2026.) is the factual predicate for Ms. Falk's motion to dismiss for failure to prosecute.[1]

The Court considers the five so-called Baptiste factors in ruling on a motion to dismiss for failure to prosecute:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair

---

[1] Ms. Falk asserts that Plaintiff's failure to include an explanation in its February 11, 2026 filing as to why Plaintiff did not file a letter promptly after November 12, 2025, constitutes "egregious disregard of this Court's orders" which "should be presumed as deliberate." (Feb. Mot. at 2.) The Court's February 6, 2026, did not require Plaintiff to provide an explanation in its filing— Plaintiff was only required to indicate whether it intended to proceed in prosecuting this case. (*See* Elec. Order, Feb. 6, 2026.)

chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014). "No single factor is generally dispositive." *Id.*

Dismissal for failure to prosecute is unwarranted. Here, approximately three months elapsed between November 12, 2025, when funding was restored to the federal government and February 11, 2026, when Plaintiff filed a letter affirming its intent to prosecute the case. However, only five days had elapsed between the Court's February 6, 2026 Order that put Plaintiff on notice that the case may be dismissed for failure to prosecute, and Plaintiff's February 11, 2026 response. Accordingly, the first two factors weigh strongly against dismissal in light of Plaintiff's prompt response to the February 6, 2026 Order.

With respect to the third *Baptiste* factor, Ms. Falk relies on a Ninth Circuit case to argue the Court should presume that she is prejudiced by the delay in this action because it impairs her pecuniary or property interests. *See In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). But *In re Eisen* concerned a *four-year* delay, not a three-month delay as is the case here. Ms. Falk does not point to any authority or allege any additional facts to support the position that she has been prejudiced by a three-month delay in Plaintiff's prosecution of this case, particularly because Defendant's letter-motion seeking dismissal of this action under Rules 12(b)(1) and (6) was pending at the time government funding was restored. Thus, the third factor does not tip in favor of dismissing this action.

The fourth and fifth factors also weigh against dismissal. Balancing the Court's interest in managing its docket with Plaintiff's interest in being heard weighs in favor of allow the case to proceed, as this case is still in its early stages.

10

Mindful of the fact that "dismissals are 'the harshest of sanctions' and [the Second Circuit's insistence] that dismissal 'be proceeded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard,'" the Court finds that dismissal for failure to prosecute is not appropriate at this stage. *Baptiste*, 768 F.3d at 216–17. Plaintiff timely responded to this Court's order once it was on notice that the case may be dismissed for failure to prosecute. As such, the facts of this case are not one of the "extreme situations" in which dismissal for failure to prosecute would be appropriate. *Id*. at 217.

**CONCLUSION**

For the reasons set forth above, Defendant's motions to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), failure to state a claim under Rule 12(b)(6), and failure to prosecute under Rule 41(b) are denied.

The parties are ordered to contact the assigned Magistrate Judge in this matter to establish a discovery schedule governing this action by March 17, 2026.

Dated: Central Islip, New York
      March 11, 2026

                                */s/ Nusrat J. Choudhury*
                                NUSRAT J. CHOUDHURY
                                United States District Judge